EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| | |
|---|---|
| El Pueblo de Puerto Rico<br><br>Recurrido<br><br>v.<br><br>Élida Rosario Paredes<br><br>Peticionaria | Certiorari<br><br>2022 TSPR 46<br><br>209 DPR ____ |

Número del Caso:  CC-2021-309


Fecha: 13 de abril de 2022


Tribunal de Apelaciones:

    Panel IX


Abogado de la parte peticionaria:

    Lcdo. Luis A. Gutiérrez Marcano


Oficina del Procurador General:

    Lcda. Mabel Sotomayor Hernández
    Subprocuradora General

    Lcdo. Héctor E. Medina Pérez
    Procurador General Auxiliar


Materia:  Procedimiento Criminal – Firmeza de una sentencia condenatoria y la procedencia de un nuevo juicio por esta sostenerse en un veredicto mayoritario.


Este documento constituye un documento oficial del Tribunal Supremo que está sujeto a los cambios y correcciones del proceso de compilación y publicación oficial de las decisiones del Tribunal. Su distribución electrónica se hace como un servicio público a la comunidad.

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

El Pueblo de Puerto Rico

    Recurrido

      v.                CC-2021-0309

Élida Rosario Paredes

    Peticionaria

Opinión del Tribunal emitida por el Juez Asociado señor MARTÍNEZ TORRES.

En San Juan, Puerto Rico, a 13 de abril de 2022.

Nos corresponde determinar si procede conceder un nuevo juicio a la Sra. Élida Rosario Paredes ya que al momento de la decisión de Ramos v. Louisiana, 590 US __, 140 S.Ct. 1390 (2020), ella aún disponía del término para acudir en revisión al Tribunal Supremo federal. Concluimos que sí. Al momento en que el Tribunal Supremo federal emitió su determinación en Ramos, la sentencia de la señora Rosario Paredes era final, pero no firme, para efectos de la norma federal de retroactividad de normas constitucionales.

I

En agosto de 2016 un jurado rindió un veredicto 9-3 contra la señora Rosario Paredes por infracción del

Art. 109 del Código Penal de Puerto Rico, 33 LPRA sec. 5162 (Agresión mutilante). En desacuerdo con el fallo condenatorio, la señora Rosario Paredes acudió al Tribunal de Apelaciones. Entre sus señalamientos de error, adujo que el foro primario no instruyó al jurado sobre la exigencia de un veredicto unánime.

No obstante, la señora Rosario Paredes no discutió ese error en su alegato ante el foro intermedio. El Tribunal de Apelaciones confirmó la sentencia condenatoria, por lo que la señora Rosario Paredes acudió ante nos. Por medio de una Resolución del 15 de noviembre de 2019, proveímos No Ha Lugar a la petición de certiorari. El 3 de diciembre de 2019, la señora Rosario Paredes presentó una moción de reconsideración, la que fue denegada el 24 de enero de 2020. Así, el 5 de febrero de 2020, remitimos el mandato.

Sin embargo, el **3 de junio de 2020**, la señora Rosario Paredes presentó ante el Tribunal de Primera Instancia una *Solicitud de nuevo juicio al amparo del derecho fundamental a un juicio justo e imparcial por veredicto unánime conforme a lo resuelto en* Ramos v. Louisiana, supra. Argumentó que el **20 de abril de 2020**, el Tribunal Supremo federal resolvió el caso de Ramos y estableció que el derecho fundamental a un juicio justo e imparcial requiere la unanimidad del jurado en los veredictos de culpabilidad. Sostuvo que, en Ramos, el Juez Asociado Gorsuch manifestó en su Opinión de conformidad que el precedente sobre la unanimidad del jurado aplicaría retroactivamente a casos que no fueran finales y firmes.

Además, la señora Rosario Paredes resaltó que, por motivo de la crisis de salud provocada por la pandemia del Covid-19, el 19 de marzo de 2020 el Tribunal Supremo federal emitió una orden extendiendo a 150 días el término de 90 días para recurrir allí. El máximo foro federal explicó que ese término se contaba a partir de la fecha del dictamen del foro inferior, de la orden que denegó una revisión discrecional o de la orden que denegó una petición oportuna de reconsideración en los casos en los que el término venciera en la fecha en la que se emitió la orden de extensión o posteriormente. Order List: 589 U.S., March 19, 2020(https://www.supremecourt.gov/orders/courtorders/031920zr_d1o3.pdf). (última visita, 13 de abril de 2022).

La señora Rosario Paredes planteó que su término para acudir en revisión al Tribunal Supremo federal vencía originalmente el **24 de abril de 2020**. Sin embargo, debido a la extensión provista por el máximo foro federal, el término vencía el **1 de agosto de 2020**.

En oposición, el Ministerio Público arguyó que la sentencia contra la señora Rosario Paredes advino final y firme cuando el Tribunal Supremo de Puerto Rico y el Tribunal de Apelaciones remitieron sus respectivos mandatos. Además, sostuvo que los planteamientos de la peticionaria son un ataque colateral en un trámite post sentencia, por lo que no procedía la aplicación de la nueva norma suscrita en Ramos. De igual forma, citó la Regla 45(e) de nuestro Reglamento, 4 LPRA Ap. XXI-B, y planteó que el mandato se remitió debido

a que la señora Rosario Paredes no solicitó oportunamente que se retuviera su remisión. Además, argumentó que la peticionaria abandonó el planteamiento sobre unanimidad del veredicto del jurado.

Por medio de una réplica, la señora Rosario Paredes insistió en que su sentencia no era final y firme al momento de emitirse Ramos v. Louisiana, supra, debido a que cuando presentó la moción al amparo de la Regla 192.1 de Procedimiento Criminal, infra, no había expirado el término para acudir en revisión ante el máximo foro federal.

El foro primario declaró No Ha Lugar la solicitud de nuevo juicio. Resolvió que, aunque el término del que disponía la señora Rosario Paredes para recurrir al Tribunal Supremo federal se extendió hasta el 1 de agosto de 2020, esta no preservó su derecho a recurrir al Tribunal Supremo federal, porque no solicitó la retención del mandato.

Inconforme, la señora Rosario Paredes recurrió ante el Tribunal de Apelaciones. Este se negó a expedir. Destacó que la señora Rosario Paredes incumplió con la Regla 45(e) de nuestro Reglamento, supra, y destacó que ya se había remitido el mandato, lo que según la Regla 84(e) del Reglamento de ese foro, 4 LPRA Ap. XXII-B, provocó que la sentencia condenatoria adviniera final y firme antes de que se decidiera Ramos v. Louisiana, supra.

En desacuerdo, la señora Rosario Paredes presentó una petición de certiorari ante nos. En síntesis, sostiene que el Tribunal de Apelaciones erró al no aplicarle la norma

dispuesta en Ramos v. Louisiana, supra. Argumenta que procede anular su sentencia y concederle un nuevo juicio, ya que su caso no era **final y firme** cuando se publicó Ramos v. Louisiana, supra. Recalca que la remisión de un mandato no es lo que convierte en firme un dictamen y que un caso es final y firme para efectos de la norma de retroactividad, solo cuando se agota el término para acudir ante el Tribunal Supremo federal. Además, afirma que exigirle presentar un recurso ante el máximo foro federal para que le aplique una norma retroactiva constituye una carga onerosa.

Por su parte, el Procurador General plantea que no se le debe conceder un nuevo juicio a la señora Rosario Paredes por tres razones principales: 1) su posible revisión al máximo foro federal no contaba con un planteamiento que involucrara una cuestión federal, 2) renunció a su planteamiento sobre la unanimidad del jurado al no plantearlo en su revisión ante el Tribunal Supremo de Puerto Rico y 3) renunció a recurrir al máximo foro federal al no solicitar la retención del mandato.

Expedido el recurso y con el beneficio de la comparecencia de ambas partes procedemos a resolver.

II

### A. Nuevo Juicio a la luz de la Regla 192.1 de Procedimiento Criminal

La Regla 192.1 de Procedimiento Criminal, 34 LPRA Ap. II, permite que una persona que se encuentre detenida por virtud de una sentencia condenatoria, solicite que esta se anule, se deje sin efecto o corrija por algunos de los

siguientes fundamentos: (1) **la sentencia se impuso en violación de las leyes o la Constitución de Puerto Rico o Estados Unidos**; (2) el tribunal no tenía jurisdicción para imponer la sentencia; (3) la sentencia expone la pena prescrita por ley, o (4) la sentencia está sujeta a ataque colateral por cualquier motivo. Íd. Esta Regla brinda "uno de los procedimientos que ofrece nuestro ordenamiento para cuestionar la validez de una sentencia dictada". Pueblo v. Contreras Severino, 185 DPR 646, 660 (2012).

En ese sentido, el mecanismo procesal provisto por la Regla 192.1, supra, se puede utilizar para atacar la **validez o constitucionalidad de una sentencia criminal cuando el convicto está cumpliendo prisión por esta**. En estos casos, "la cuestión que ha de plantearse es si la sentencia impugnada está viciada por un error fundamental que contradice la noción más básica y elemental de lo que constituye un procedimiento criminal justo". Pueblo v. Rivera Montalvo, 205 DPR 352, 371 (2020). Así, el Tribunal podrá dejar sin efecto la sentencia, ordenar la excarcelación del convicto y ponerlo en libertad, dictar nueva sentencia **o conceder un nuevo juicio**, según proceda. Pueblo v. Román Mártir, 169 DPR 809, 824 (2007).

"La moción al amparo de esta regla, puede presentarse ante el tribunal sentenciador en cualquier momento, después de dictada la sentencia, **incluso cuando esta haya advenido final y firme**". (Énfasis nuestro). Pueblo v. Pérez Adorno, 178 DPR 946, 965 (2010). Los fundamentos para revisar una

sentencia mediante este mecanismo se limitan a cuestiones de derecho y no de hechos que hubieren sido adjudicas por el tribunal. Íd., pág. 966.

### B. Aplicación de Ramos v. Louisiana a casos pendientes de revisión

La normativa imperante en nuestro ordenamiento en torno al derecho a un juicio por jurado cambió significativamente con la determinación del Tribunal Supremo federal en Ramos v. Louisiana, supra. En ese caso, el máximo foro federal resolvió que la Sexta Enmienda -que se incorporó a los estados por vía de la Decimocuarta Enmienda- no admite veredictos de culpabilidad que no sean unánimes en los casos penales que se ventilan en los tribunales estatales. Íd., pág. 1397.

A poco menos de un mes de la determinación de Ramos, aplicamos esa nueva norma en Pueblo v. Torres Rivera II, 204 DPR 288 (2020). Allí explicamos que "[e]l reconocimiento de la unanimidad como una cualidad intrínseca del derecho fundamental a un juicio por un jurado imparcial es vinculante en nuestra jurisdicción y obliga a nuestros tribunales a requerir veredictos unánimes en todos los procedimientos penales por delitos graves que se ventilen en sus salas". Íd. pág. 307. Además, destacamos que, en Ramos, se hizo referencia específicamente a "la aplicabilidad de la norma pautada a aquellos casos que estén pendientes de revisión y, por lo tanto, no sean finales **y firmes**". (Énfasis nuestro). Íd. pág. 305-306, esc. 18. Explicamos que esas expresiones

eran cónsonas con nuestros dictámenes previos relacionados con la aplicación retroactiva de las normas jurisprudenciales en los casos pendientes ante nuestros tribunales. Así, expresamos que "[**u]na norma adoptada jurisprudencialmente que provea una defensa de carácter constitucional a un acusado aplicará retroactivamente 'siempre que al momento de adoptarse esa norma la sentencia de la cual se recurre no haya advenido final <u>y firme</u>'**". (Énfasis nuestro y Citas depuradas). <u>Íd</u>. págs. 305-306, esc. 18. Véase, además, <u>Pueblo v. Santos Santos</u>, 185 DPR 709, 738 (2012). ("deberá tener efecto retroactivo sobre todos aquellos casos que al momento de la adopción de la nueva norma no hayan advenido finales **y firmes**"). (Énfasis nuestro).

Respecto a la retroactividad de las normas constitucionales, en <u>Griffith v. Kentucky</u>, 479 U.S. 314 (1987), el máximo foro federal hizo extensiva la aplicación retroactiva de **todas** las normas constitucionales de carácter penal a casos que al momento de emitirse la nueva norma no hubieran advenido **finales**. Resolvió que cuando se determina una nueva regla o norma de procedimiento penal la integridad de la revisión judicial exige que se aplique la norma de forma retroactiva a todos los casos similares -estatales o federales- **que estén pendientes de revisión directa o que aún no han advenido finales**. <u>Íd.</u>, pág. 322. ("*We therefore hold that a new rule for the conduct of criminal prosecutions is to be applied retroactively to all cases, state or*

*federal,* **pending on direct review or not yet final,** *with no exceptions for cases in which the new rule constitutes a "clear break" with the past"*). (Énfasis nuestro).

En esa línea, en Pueblo v. Thompson Faberllé, 180 DPR 497, 505 (2010) expresamos que "a las interpretaciones judiciales que proveen al acusado una defensa de rango constitucional se les ha conferido aplicación retroactiva en los casos que al momento de publicarse la norma no hayan [sic] advenido una sentencia final y firme". Véase, además, Pueblo v. González Cardona, 153 DPR 765, 774 (2001).

Recientemente, en Edwards v. Vannoy, 593 U.S. __ (2021), 141 S. Ct. 1547, se atendió el planteamiento sobre la aplicabilidad retroactiva de la norma pautada en Ramos. Allí el Tribunal Supremo federal coligió que la nueva norma anunciada respecto a la exigencia de unanimidad del jurado para obtener una determinación de culpabilidad en un caso por delito grave no era de aplicación retroactiva a casos pendientes en revisión colateral federal, pero sí a casos pendientes de revisión directa. ("*A new rule of criminal procedure applies to cases on direct review, even if the defendant's trial has already concluded.*"). Añadió que, "en virtud de lo resuelto en Ramos, los acusados de delitos cuyos casos aún están en revisión directa o cuyos casos se presenten en el futuro tendrán el beneficio del derecho de unanimidad del jurado anunciado en Ramos". (Traducción nuestra y citas depuradas). Íd. pág. 1562 *("[U]nder the Court's holdings in Ramos and this case, criminal defendants*

*whose cases are still on direct review or whose cases arise in the future will have the benefit of the jury-unanimity right announced in Ramos"*).

A igual conclusión llegamos en <u>Pueblo v. Thompson Faberllé</u>, <u>supra</u>, pág. 507, al estudiar la casuística del Tribunal Supremo federal y concluir que "la jurisprudencia más reciente invita a que se les dé aplicación retroactiva a aquellas interpretaciones judiciales en casos criminales cuya sentencia no haya advenido final y firme, o que se encuentre en proceso de revisión directa".

Ahora, ¿el caso de la señora Rosario Paredes estaba en revisión directa cuando se emitió la norma de <u>Ramos</u>? Para contestar esta interrogante debemos estudiar qué convierte un caso en final y firme para efectos de la doctrina de retroactividad.

El Tribunal Supremo federal explicó en <u>Clay v. United States</u>, 537 U.S. 522, 527 (2003), que la finalidad "se produce cuando este Tribunal confirma una condena en cuanto a los méritos en revisión directa o deniega una petición de <u>certiorari</u>, **o cuando <u>expira</u> el plazo para presentar una petición de certiorari**". (Énfasis nuestro). ("*Finality attaches when this Court affirms a conviction on the merits on direct review or denies a petition for a writ of certiorari, or when the time for filing a certiorari petition expires*"). Véase, además, <u>Caspari v. Bohlen</u>, 510 U.S. 383, 390 (1994). ("*A state conviction and sentence become final for purposes of retroactivity analysis when the availability*

*of direct appeal to the state courts has been exhausted and* **the time for filing a petition for a writ of certiorari has elapsed** *or a timely filed petition has been finally denied*"). (Énfasis nuestro).

De igual forma en Edwards v. Vannoy, supra, pág. 1568, el Juez Asociado Gorsuch, en su opinión concurrente a la que se unió el Juez Asociado Thomas, manifestó que ese foro ha dejado claro que, en nuestro ordenamiento criminal, una sentencia adviene final luego de finalizado el juicio y el proceso apelativo, incluyendo la oportunidad de obtener la revisión por parte del Tribunal Supremo federal mediante certiorari en cuestiones de derecho federal. ("*Everyone accepts that, in our criminal justice system today, a judgment becomes final only after the completion of a trial and the appellate process, including the opportunity to seek certiorari from this Court on questions of federal law*").

Por nuestra parte, hemos reconocido que un dictamen judicial es final cuando se archiva en autos la notificación y se registra la sentencia. Cruz Roche v. Colón y Otros, 182 DPR 313, 323 (2011). Ahora bien, tanto en los procesos civiles como en los penales, "[l]a sentencia se convierte en firme según el transcurso del tiempo. Es firme una vez transcurrido el término para pedir reconsideración o apelar sin que esto se haya hecho o al concluir el proceso apelativo". R. Hernández Colón, Derecho Procesal Civil, 6ta ed., Ed. Lexis Nexis, 2017, Puerto Rico, pág. 423.

Cuando la señora Rosario Paredes solicitó su nuevo juicio a la luz de la Regla 192.1 de Procedimiento Criminal, supra, su caso era final pero no firme para efectos de la norma de retroactividad. Todavía no había transcurrido "el plazo para presentar una petición de certiorari [ante el Tribunal Supremo federal]". (Traducción nuestra). Clay v. United States, supra, pág. 527. ("*when the time for filing a certiorari petition expires*"). Por lo tanto, le aplicaba la norma anunciada en Ramos, porque **al momento de adoptarse esa norma constitucional la sentencia de la señora Rosario Paredes no había advenido final y firme**. Pueblo v. Torres Rivera II, supra, págs. 305-306.

En cambio, el Procurador General entiende que la sentencia de la señora Rosario Paredes se convirtió en final, firme e inapelable el 5 de febrero de 2020, cuando enviamos el mandato a los foros inferiores. Se equivoca.

Hemos expresado que el mandato es "el medio que posee un tribunal en alzada de comunicarle a un tribunal inferior qué determinación ha tomado sobre la sentencia objeto de revisión y ordenarle actuar de conformidad con la misma". Colón y otros v. Frito Lays, 186 DPR 135, 151 (2012). Es en el momento de la remisión del mandato al foro inferior "que el recurso... concluye para todos los fines legales, por lo que se entiende que no es hasta entonces que [el foro revisor] pierde jurisdicción en lo concerniente al asunto". Íd., pág. 153. La finalidad que le imparte la remisión del mandato al caso es frente al tribunal que tenía ante su

consideración la controversia y no ante el foro de mayor jerarquía del cual la parte perdidosa pueda recurrir.

A esos efectos, en Clay v. United States, supra, pág. 527, el máximo foro federal explicó que conforme a la Regla 13(3) de su Reglamento "[e]l plazo para presentar una petición de certiorari transcurre a partir de la fecha de entrada de la sentencia u orden que se pretende revisar, **y no a partir de la fecha de emisión del mandato** (o su equivalente según la práctica local)".(Traducción y énfasis nuestro).("*The time to file a petition for a writ of certiorari runs from the date of entry of the judgment or order sought to be reviewed, and not from the issuance date of the mandate (or its equivalent under local practice*"). De igual forma, en el caso de un convicto, el Tribunal Supremo federal ha dejado claro que, si el recluso opta por no ir en revisión directa ante el Tribunal Supremo federal, la condena se convierte en final y firme cuando expira el plazo para presentar una petición de certiorari. Jimenez v. Quarterman, 555 US 113, 119 (2009)( "*We have further held that if the federal prisoner chooses not to seek direct review in this Court, then the conviction becomes final when 'the time for filing a certiorari petition expires'*").

En Puerto Rico, nuestro Reglamento reconoce que el mandato se puede retener, a discreción nuestra. En específico, la Regla 45(e) de nuestro Reglamento, supra, dispone:

(e) En cualquier caso en que una sentencia o resolución de este Tribunal pueda ser revisada por el Tribunal Supremo de Estados Unidos de América mediante un recurso de certiorari, **podrá retenerse**, a solicitud de parte, la remisión del mandato al tribunal revisado por un término razonable. (Énfasis nuestro).

Hemos dejado claro que la retención del mandato es un asunto "que descansa en nuestra sana discreción y que la mera presentación de un escrito indicando el propósito de… solicitar revisión por certiorari ante el Tribunal Supremo federal no inhibe *ipso jure* el cumplimiento por el secretario de este Tribunal" de remitir el mandato al foro revisado. Ubiñas v. Medina, 89 DPR 666, 671 (1963).

El hecho de que, en el ejercicio de nuestra discreción, neguemos una solicitud de retención de mandato no significa que la parte solicitante no pueda presentar su recurso de revisión ante el Tribunal Supremo federal. Como indicamos, lo determinante para ir en revisión a ese foro, es presentar su recurso dentro del término dispuesto en su reglamento. Clay v. United States, supra, pág. 27. Así quedó demostrado en Clay, cuando el Tribunal Supremo federal reconoció que aun cuando se remita el mandato al foro revisado previo a que se presente un recurso de certiorari ante ellos, si el recurso de revisión se presenta dentro del término dispuesto en el reglamento, el Tribunal está en posición para atenderlo. Íd. Si la parte opta por no acudir al Tribunal Supremo federal, entonces la sentencia local adviene firme

para efectos de la norma federal. Jimenez v. Quarterman, supra.

Incluso, hemos reconocido que luego de que remitamos el mandato al foro revisado, en auxilio de una apelación o revisión de una Sentencia o Resolución nuestra, tenemos el "poder de ordenar la devolución de[l] mandato porque al así hacerlo en ninguna forma interviene o altera la sentencia apelada". Fuentes v. Aponte, 63 DPR 759, 760 (1944).

Resulta claro, entonces, que lo determinante a la hora de presentar una solicitud de certiorari ante el Tribunal Supremo federal no es si se remitió o no el mandato, sino que la petición se presente dentro del término reglamentario. Por lo tanto, el derecho de la señora Rosario Paredes a presentar una solicitud de certiorari ante el máximo foro federal no está sujeto, como alega el Procurador General, a que se nos notifique la intención de ir en revisión a ese foro y que retengamos el mandato.

La jurisdicción apelativa del Tribunal Supremo federal sobre las determinaciones del Tribunal Supremo de Puerto Rico está gobernada por 28 U.S.C. sec. 1258. Esta sección dispone que una decisión final del Tribunal Supremo de Puerto Rico puede ser objeto de revisión directa por el Tribunal Supremo federal en virtud de un recurso de certiorari cuando, entre otras razones, se cuestione la validez de un estatuto por ser contrario a la Constitución federal, tratados o leyes de Estados Unidos.

En esa línea, el Procurador General argumentó que debido a que la señora Rosario Paredes no planteó el asunto sobre la unanimidad del jurado en su revisión ante el máximo foro local, "la peticionaria estaba imposibilitada de recurrir ante el Máximo Foro federal". Alegato del Pueblo de Puerto Rico, pág. 2. El Procurador General señaló que en "ausencia de un planteamiento federal" el Tribunal Supremo federal no tiene jurisdicción. Íd. No le asiste la razón.

Es cierto que para que el máximo foro federal pueda revisar una determinación de un tribunal de última instancia estatal, la controversia tiene que tratar sobre un asunto federal. Sin embargo, eso no impide la presentación del recurso ante el máximo foro federal. En otras palabras, una parte no está impedida de presentar un recurso de revisión ante el máximo foro federal, aunque su recurso, ante la falta de un asunto federal, culmine con toda probabilidad en la denegatoria del Tribunal a intervenir. R. L. Stern y otros, Supreme Court Practice, 7ma ed., Washington, D.C., 1993, sec. 3.17, pág. 122.

Lo aquí pertinente es si al momento en que se decidió Ramos, el caso de la señora Rosario Paredes era o no **final, firme e irrevisable**. Es inmeritorio si durante el proceso apelativo local se había planteado un asunto federal o no. De hecho, no fue hasta el 20 de abril de 2020 – dos meses después de culminado el proceso de revisión apelativa ante nosotros- que se emitió la norma en Ramos. Es a partir de ese momento que la señora Rosario Paredes tenía la

oportunidad de plantear conforme a derecho que le aplicaran la norma de Ramos. No podemos resolver que, aunque la nueva norma de Ramos se resolvió luego de finalizada la revisión por parte nuestra, pero antes de que adviniera firme por el transcurso del término para ir en revisión al Tribunal Supremo federal, la señora Rosario Paredes no tiene ningún remedio en ley.

De igual forma, tampoco podemos acceder al planteamiento del Procurador General referente a que la señora Rosario Paredes no tiene derecho a un nuevo juicio a la luz de Ramos, debido a que "a pesar de que en un principio mostró intención de reclamar al Tribunal de Apelaciones la unanimidad de su veredicto, posteriormente desistió pues, conforme admitió, el estado de derecho vigente al momento permitía los veredictos por mayoría". Alegato del Pueblo de Puerto Rico, pág. 2.

Cuando estudiamos el trasfondo procesal de la controversia podemos comprender la razón por la cual la señora Rosario Paredes no abundó en el alegato ante el foro intermedio el señalamiento de error sobre la unanimidad del jurado, planteado en su recurso de apelación ante ese foro. La peticionaria presentó el 8 de febrero de 2017 un recurso de apelación ante el foro intermedio. Entre los errores señalados en su escrito de apelación se encontraba el error del foro primario al no instruir al jurado sobre el requisito de unanimidad. Ahora bien, el 25 de abril de 2017 resolvimos Pueblo v. Casellas Toro, 197 DPR 1003 (2017), en el cual

determinamos que los veredictos de culpabilidad por mayoría eran permisibles al amparo de nuestra Constitución. Así, el 28 de enero de 2019, la señora Rosario Paredes presentó su alegato ante el foro intermedio. Allí no abundó sobre el planteamiento de unanimidad del jurado.

La señora Rosario Paredes expresó que no discutió el planteamiento de la unanimidad ante el foro intermedio porque cuando presentó su alegato ya habíamos resuelto Pueblo v. Casellas Toro, supra. Esa explicación es satisfactoria. No podemos penalizar a una parte por acatar los precedentes de este Tribunal.

De hecho, los máximos foros judiciales de Louisiana y Oregon -jurisdicciones que, al igual que la nuestra, no requerían la unanimidad en el jurado antes de Ramos- han reconocido que Ramos aplica a casos que no sean finales incluso cuando el error de la unanimidad no se planteó previamente. Véanse: State v. Varnado, 296 So.3d 1051 ( La. 2020)("*If **the non-unanimous jury claim was not preserved for review in the trial court or was abandoned during any stage of the proceedings, the court of appeal should nonetheless consider the issue as part of its error patent review.** The present matter was pending on direct review when Ramos v. Louisiana was decided, and therefore the holding of Ramos applies*") (Énfasis nuestro y Citas depuradas); State v. Williams, 366 Or. 495, 499 (2020) (*The Ramos decision transformed an assignment of error to a trial court ruling permitting a nonunanimous verdict from one that has been*

*rejected repeatedly by Oregon appellate courts into one with merit. Thus, the timing of the Ramos decision makes a difference in this case, and defendant's omission of the Sixth Amendment issue in his opening brief in the Court of Appeals was understandable, given that it occurred before the grant of certiorari in Ramos*").

Por último, el Procurador General argumentó que la petición de nuevo juicio a la luz de la Regla 192.1 de Procedimiento Criminal, supra, constituye un ataque colateral impermisible en un trámite post-sentencia. No le asiste la razón.

Hemos expresado que un ataque directo "es aquél que dentro del mismo pleito se hace a la sentencia mediante cualquiera de los procedimientos autorizados por ley, como por ejemplo a través de apelación, moción de nuevo juicio o moción de reconsideración, siempre que tal ataque se haga dentro del período de tiempo fijado por la ley…". Rodríguez v. Albizu, 76 DPR 631, 635 (1954). En cambio, un ataque colateral es el que se lleva a cabo "en cualquiera otra forma, bien sea en procedimiento independiente, ante otra corte o fuera del término concedido por la ley". Íd.

Una persona puede atacar su convicción directamente, a través del recurso de certiorari, **o colateralmente**, a través de procedimientos posteriores a la sentencia, tales como la moción según la Regla 192.1 de Procedimiento Criminal, supra, y el recurso de hábeas corpus. Pueblo v. Román Mártir, 169 DPR 809, 822 (2007). El mecanismo de la Regla 192.1 de

Procedimiento Criminal, supra, "permite que un acusado ataque la validez de la sentencia en su contra si puede demostrar que se le violaron sus derechos". Pueblo v. Pérez Adorno, supra, pág. 949. Este mecanismo permite impugnar una sentencia "impuesta en violación de la Constitución... del Estado Libre Asociado de Puerto Rico o la Constitución … de Estados Unidos…" Regla 192.1 (a)(1) de Procedimiento Criminal, supra.

Al momento que se decidió Ramos, el caso de la señora Rosario Paredes no era firme para efectos de la norma de retroactividad de normas constitucionales. Por lo tanto, aplicaba a su caso.

Por eso, el 3 de junio de 2020, la señora Rosario Paredes presentó una moción al amparo de la Regla 192.1 de Procedimiento Criminal, supra, solicitando la celebración de un nuevo juicio porque su veredicto no fue por un jurado unánime, según requiere Ramos. Podía hacerlo porque su caso -al momento en que se decidió Ramos- no era firme porque todavía podía ser objeto de revisión. Pueblo v. Thompson Faberllé, supra, pág. 507.

Para que una parte se beneficie de la aplicación retroactiva de una norma constitucional, esta no tiene que solicitarla al momento en que se publique la nueva norma. No es un ataque colateral si al momento de publicarse la nueva norma la sentencia no ha advenido final y firme. Eso fue lo que ocurrió en el caso de la señora Rosario Paredes.

III

Por los fundamentos antes expuestos, resolvemos que lo resuelto en Ramos v. Louisiana, supra, aplica a este caso, porque la sentencia condenatoria no era firme al momento en que el Tribunal Supremo federal decidió la nueva norma constitucional. Así, se revoca la sentencia que el Tribunal de Apelaciones dictó contra la señora Rosario Paredes, se declara con lugar la moción al amparo de la Regla 192.1 de Procedimiento Civil, supra, y se devuelve el caso al Tribunal de Primera Instancia para que proceda conforme con lo aquí dispuesto. La peticionaria, señora Rosario Paredes, tiene derecho a su nuevo juicio.

Se dictará sentencia de conformidad.


                                    RAFAEL L. MARTÍNEZ TORRES
                                         Juez Asociado

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

El Pueblo de Puerto Rico

     Recurrido

          v.                          CC-2021-0309

Élida Rosario Paredes

     Peticionaria

SENTENCIA

En San Juan, Puerto Rico, a 13 de abril de 2022.

     Por los fundamentos antes expuestos, en la Opinión que antecede, la cual se hace formar parte de esta Sentencia, resolvemos que lo resuelto en Ramos v. Louisiana, supra, aplica a este caso, porque la sentencia condenatoria no era firme al momento en que el Tribunal Supremo federal decidió la nueva norma constitucional. Así, se revoca la sentencia que el Tribunal de Apelaciones dictó contra la señora Rosario Paredes, se declara con lugar la moción al amparo de la Regla 192.1 de Procedimiento Civil, supra, y se devuelve el caso al Tribunal de Primera Instancia para que proceda conforme con lo aquí dispuesto. La peticionaria, señora Rosario Paredes, tiene derecho a su nuevo juicio.

     Lo acordó el Tribunal y certifica el Secretario del Tribunal Supremo. La Jueza Presidenta Oronoz Rodríguez emite la expresión siguiente:

     Estoy conforme con el dictamen que hoy emitimos. Este caso trata únicamente sobre la aplicación retroactiva de Ramos v. Louisiana, 590 US __, 140 S.Ct. 1390 (2020) a casos que

sean finales, mas no firmes por estar vigente el término para acudir en revisión judicial a la Corte Suprema de los Estados Unidos de América. La Opinión no resuelve, ni se puede interpretar que resolvió, que los casos finales y firmes sin oportunidad de acudir al foro federal por vía directa no tienen derecho a exigir la aplicación retroactiva de Ramos v. Louisiana, supra, a nivel estatal.

Aclarado el alcance de la opinión mayoritaria estoy conforme con permitirle a la Sra. Élida Rosario Paredes el nuevo juicio al que tiene derecho.

El Juez Asociado señor Estrella Martínez emite la expresión de conformidad siguiente:

Estoy conforme con la *Opinión* mayoritaria dado que aplica una protección constitucional a un caso que aún no se ha tornado final y firme, según lo exige nuestro estado de Derecho. No obstante, me sostengo en mi postura con respecto a la aplicación retroactiva de la norma de la unanimidad en el veredicto de culpabilidad a los casos ya finales y firmes.

Como es conocido, en mi voto particular disidente en *Pueblo v. Alers De Jesús*, 206 DPR 872 (2021), expuse que la norma de unanimidad en el veredicto de culpabilidad establecida en *Ramos v. Louisiana*, 590 US __, 140 S.Ct. 1390 (2020), debe aplicar retroactivamente a todos los casos, tanto a los no finales y firmes como a los que sí lo son. Ello, en consideración a las garantías individuales involucradas y la magnitud que tiene esta nueva norma constitucional sobre los procesos judiciales penales. Asimismo, ante la aplicación de la norma de *Teague v. Lane*, 489 US 288 (1989), sus excepciones y la doctrina del contenido mínimo. Ahora bien, la controversia que presenta el caso de autos se ciñe a un asunto que no es final y firme, por lo que no se requiere hacer referencia a las excepciones de *Teague*.

En ese sentido, coincido con que este caso no se tornó final y firme, pues no había vencido el término para acudir en revisión ante el Tribunal Supremo federal. Por tanto, estoy de acuerdo con el análisis y el resultado plasmado en la *Opinión* mayoritaria, ya que se le reconoce a la Sra. Élida Rosario Paredes su derecho a la celebración de un nuevo juicio bajo el esquema de la votación unánime del Jurado.

El Juez Asociado señor Colón Pérez está conforme y hace constar las siguientes expresiones:

Por entender que hoy nos limitamos a pautar que la protección constitucional plasmada en el normativo caso de *Ramos v. Louisiana*, 590 US __, 140 S.Ct. 1390 (2020), aplica retroactivamente a aquellos casos que no hayan advenido final y firme, estamos conforme.

El Juez Asociado señor Rivera García disiente con opinión escrita a la cual se une la Jueza Asociada señora Pabón Charneco.

Javier O. Sepúlveda Rodríguez
Secretario del Tribunal Supremo

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| | | |
|---|---|---|
| El Pueblo de Puerto Rico<br><br>Recurrido<br><br>v.<br><br>Élida Rosario Paredes<br><br>Peticionaria | CC-2021-0309 | *Certiorari* |

**Opinión disidente emitida por el Juez Asociado señor Rivera García, a la cual se une la Jueza Asociada señora Pabón Charneco.**

En San Juan, Puerto Rico, a 13 de abril de 2022.

A la luz de las consideraciones que expondré más adelante, disiento enérgicamente del dictamen mayoritario de este Tribunal que erróneamente reconoce que la Sra. Élida Rosario Paredes (señora Rosario Paredes o peticionaria) tiene derecho a un nuevo juicio, toda vez que al momento en que se decidió Ramos v. Louisiana, 140 S.Ct. 1390 (2020), la sentencia en su contra no había advenido final y firme. Por el contrario, es mi criterio que la sentencia en contra de la peticionaria adquirió finalidad y firmeza previo a que la Máxima Corte federal pautara la nueva norma constitucional en el referido caso, por lo que es improcedente aplicar lo allí pautado.

En *primer* lugar, es un hecho innegable que la señora Rosario Paredes **abandonó y renunció a señalar como error,**

**el asunto referente a la unanimidad de jurados** durante su trámite apelativo directo bajo el correcto argumento de que el derecho vigente al momento de decidirse su caso, tanto a nivel estatal como federal, permitía veredictos condenatorios por mayoría. No obstante, la mayoría ancla su determinación en los argumentos contradictorios y antagónicos brindados por la peticionaria, quien luego de conocer la norma establecida en Ramos, **pretendió impugnar el estado de derecho al que <u>anteriormente le otorgó completa deferencia y al que renunció objetar</u>**. Es decir, por un lado, la señora Rosario Paredes reconoció que no era prudente ni sensato impugnar el estado de derecho vigente en Puerto Rico, pero, por otro lado, arguyó que aún estaba a tiempo para impugnar, precisamente, ese estado de derecho ante el Tribunal Supremo federal. Contradictorio por demás.[1] Ciertamente, los argumentos representan una justificación, en extremo acomodaticia, que no le hace justicia al rigor requerido para la tramitación de los procesos apelativos. Indudablemente, tal proceder es neurálgico para concluir que el presente caso era uno **<u>final y firme</u>**. **La peticionaria no puede procurar un remedio cuando sus acciones y manifestaciones han ido en una dirección diametralmente opuesta a lo que ahora pretende.** Tengamos en cuenta que los peticionarios son los dueños de sus reclamos y pueden decidir si

---

[1] De hecho, el ordenamiento jurídico que permitía los veredictos por mayoría se mantuvo inalterado varios meses luego de que concluyera su trámite apelativo directo estatal.

levantar un cuestionamiento basado en derecho federal o atenerse y depender únicamente de las provisiones del derecho estatal.[2]

En *segundo* lugar, difiero de la conclusión a la que llega la mayoría de este Tribunal al señalar que, para propósitos de la finalidad y firmeza del caso, "***es inmeritorio si durante el proceso apelativo estatal se planteó un asunto federal o no***", sino que solo basta que se presente el recurso de revisión ante el máximo foro federal, "***aunque su recurso, ante la falta de un asunto federal, culmine con toda probabilidad en la denegatoria del Tribunal a intervenir***".

Debemos tener presente, que lo medular en este caso no es si la peticionaria planteó o no una cuestión federal, sino que **inicialmente la señaló, pero subsiguientemente la renunció de manera voluntaria** en su alegato al Tribunal de Apelaciones y en el *certiorari* ante nos. De esta forma, este Tribunal nunca tuvo ante su consideración un cuestionamiento amparado en la Constitución, leyes o tratados de Estados Unidos, que le permitiera al Tribunal Supremo federal revisar nuestra

---

[2] Véase, C. Wright, A. Miller & M. Kane, *Federal Practice and Procedure*, sec. 2767, págs. 744-745, 2da ed. (1983)("[the] plaintiff is master of his claim and may choose not to assert a federal right that is available and rely only on state law..."); Véase, además, *Caterpillar, Inc. v. Williams*, 482 US 386, 392 (1987), (1987)([A] plaintiff is "the master of the claim; he or she may avoid federal jurisdiction by exclusive reliance on state law").

determinación.[3] Recordemos el Tribunal Supremo federal no es un organismo apelativo competente cuando se trata de casos resueltos por las cortes estatales o de los territorios sobre asuntos que no involucren derecho federal.

Como complemento de lo anterior, la mayoría plantea que "*aunque la nueva norma de Ramos se resolvió **luego de finalizada la revisión por parte nuestra***", la peticionaria podía acudir en revisión al Tribunal Supremo federal porque su caso no era final y firme. Lo anterior, sin sopesar, como mencionamos, que la señora Rosario Paredes **había renunciado consciente y voluntariamente a impugnar el estado de derecho vigente**, que valga señalar, estaba apoyado en reiterada jurisprudencia federal de no exigirle a los estados y territorios la unanimidad en los veredictos de culpabilidad.

En palabras sencillas, lo que implica esta conclusión es que **todos los casos** que resuelva esta Curia **adquirirán firmeza, exclusivamente, luego de que**

---

[3] No debemos olvidar que el Congreso de Estados Unidos, le concedió al Tribunal Supremo federal autoridad para revisar ciertas determinaciones de este Tribunal de la manera siguiente:

Final judgments or decrees rendered by the Supreme Court of the Commonwealth of Puerto Rico may be reviewed by the Supreme Court by writ of certiorari **where the validity of a treaty or statute of the United States is drawn in question** or **where the validity of a statute of the Commonwealth of Puerto Rico is drawn in question on the ground of its being repugnant to the Constitution, treaties, or laws of the United States,** or where any title, right, privilege, or immunity is specially **set up or claimed under the Constitution or the treaties or statutes of, or any commission held or authority exercised under, the United States.** 28 USC 1258.

**transcurra el término que tienen las partes que interesan revisión por la Máxima Corte federal**, independientemente de **si abandonó su reclamo <u>en virtud del derecho vigente</u>, si no tiene un cuestionamiento federal, si no tiene méritos o si es un recurso que carece de fundamentos jurídicos válidos.** Esta determinación crea un delicado precedente que trastoca las instancias más básicas de nuestro ordenamiento jurídico y disloca la autonomía de nuestro sistema judicial.

Ahora bien, a pesar de que los hechos se encuentran consignados en la Opinión mayoritaria, entendemos necesario pormenorizarlos en esta disidencia.

**I**

Por hechos ocurridos el 28 de julio de 2015, el Ministerio Público presentó contra la señora Rosario Paredes un cargo por infringir el Artículo 109 del Código Penal de Puerto Rico de 2012, de Agresión Grave, en su modalidad de lesión mutilante. El juicio se celebró por jurado y la señora Rosario Paredes fue declarada culpable del delito imputado luego de una votación 9 a 3.

El 18 de enero de 2017 el Tribunal de Primera Instancia, Sala de San Juan, emitió la correspondiente *Sentencia* y condenó a la señora Rosario Paredes a cumplir quince (15) años de cárcel.[4]

---

[4] Apéndice de la Petición de *certiorari*, *Sentencia*, pág. 34.

Inconforme con el fallo, el 8 de febrero de 2017, la señora Rosario Paredes presentó su **escrito inicial de apelación** ante el Tribunal de Apelaciones. Entre los cuatro (4) errores que le imputó al foro primario, señaló que este incidió al "no instruir al Jurado sobre un veredicto unánime, 12-0".[5] Sin embargo, el 28 de enero de 2019, la peticionaria presentó el *Alegato del Apelante* y **en este, se limitó a señalar, únicamente, dos errores** dirigidos expresamente, a cuestionar la apreciación de la prueba. Nada señaló —mucho menos discutió— sobre el error referente a la unanimidad para alcanzar veredictos condenatorios.[6] Así las cosas, el 20 de agosto de 2019 el foro intermedio dictó una *Sentencia* en la que confirmó el dictamen del Tribunal de Primera Instancia.[7] Insatisfecha, el 4 de septiembre de 2019, la señora Rosario Paredes solicitó reconsideración y la misma fue denegada.

Aún inconforme con este proceder, el 26 de septiembre de 2019, la señora Rosario Paredes presentó

---

[5] Íd., *Apelación Criminal,* págs. 36-37.

[6] Íd., *Alegato de la Apelante*, págs. 42-64. Los errores señalados son los siguientes:

> Erró el honorable tribunal de primera instancia al declarar culpable a la señora rosario paredes del delito de agresión grave con el agravante de mutilación aun cuando la prueba de cargo no demostró más allá de duda razonable su culpabilidad por dicho delito.
>
> Erró el honorable tribunal de primera instancia al declarar culpable a la señora rosario paredes del delito de agresión grave con el agravante de mutilación aun cuando en la vista preliminar en alzada se obtuvo una determinación de causa probable por el delito de agresión grave en su modalidad general.

[7] Íd., *Sentencia del Tribunal de Apelaciones*, págs. 65-97.

una *Petición de Certiorari* ante este Tribunal.[8] En tal ocasión, **la peticionaria presentó exclusivamente, <u>un solo señalamiento de error</u>**, el cual, similar a lo señalado en su alegato ante el tribunal intermedio, giró en torno a la **suficiencia de la prueba**.[9] La peticionaria no le solicitó a esta Curia que revisara la decisión del foro primario por no instruirle al jurado que para lograr un veredicto de culpabilidad válido el mismo tenía que ser unánime. Ulteriormente, el 15 de noviembre de 2019, denegamos expedir el recurso.[10] No conteste con tal determinación, la peticionaria presentó una *Moción de Reconsideración* el **3 de diciembre de 2019**, la cual denegamos mediante *Resolución* emitida a esos fines el **24 de enero de 2020, notificada el 30 de enero de 2020**.[11] Cabe destacar que la peticionaria **<u>no</u>** solicitó una segunda reconsideración.

Consecuentemente, emitimos el correspondiente mandato el **5 de febrero de 2020**. Posteriormente, el 19 de febrero de 2020, el Tribunal de Apelaciones hizo lo propio.

---

[8] Íd., *Petición de Certiorari al Tribunal Supremo*, págs. 103-121.

[9] Específicamente, **el único error señalado** imputaba lo siguiente:

> Erró el Honorable Tribunal de Apelaciones al confirmar la determinación de culpabilidad del delito de agresión grave con el agravante de mutilación **aun cuando la prueba de cargo demostró que el delito fue cometido dentro de una súbita pendencia**.

[10] Íd., *Resolución Tribunal Supremo,* pág. 124.

[11] Íd., *Moción de Reconsideración y Resolución del Tribunal Supremo*, pág. 125-128, 189-190.

Luego de transcurridos cinco (5) meses desde que se adjudicó la última cuestión viva en el caso, el 3 de junio de 2020, la señora Rosario Paredes presentó ante el Tribunal de Primera Instancia una *Solicitud de Nuevo Juicio al Amparo del Derecho Fundamental a un Juicio Justo e Imparcial por Veredicto Unánime (Ramos v. Luisiana)*,[12] en la que solicitó la anulación de la Sentencia en su contra y la celebración de un nuevo juicio. Amparó su reclamo en el hecho de que el Tribunal Supremo federal, en Ramos v. Louisiana, *supra*, estableció que el derecho fundamental a un juicio por jurado requería la unanimidad en los veredictos de culpabilidad para que estos fueran válidos. Sostuvo, además, que la nueva norma constitucional debía aplicarse a su caso ya que el mismo no era final y firme, toda vez que todavía tenía derecho a recurrir en revisión al Tribunal Supremo federal. En ese sentido, arguyó que el término para acudir en revisión ante la Corte Suprema federal, originalmente de noventa (90) días, se extendió a ciento cincuenta (150) días por razón de la pandemia del COVID-19.

Por su parte, el Ministerio Público se opuso y arguyó que el caso de la peticionaria advino final y firme cuando los foros apelativos remitieron el mandato al foro primario, y que la peticionaria no había notificado al Tribunal Supremo de Puerto Rico de su

_____

[12] Íd., *Solicitud de Nuevo Juicio*, pág. 131-136.

intención de recurrir ante el Tribunal Supremo federal de conformidad con la Regla 45(e) del Reglamento de este Tribunal,[13] por lo que no procedía la aplicación de la nueva norma. Además, señaló que la peticionaria abandonó intencionalmente su reclamo sobre el asunto de la unanimidad en los veredictos del jurado.

Entablada la controversia, el foro primario denegó la solicitud de nuevo juicio. En lo pertinente, determinó que la señora Rosario Paredes no preservó su derecho a recurrir al Máximo Foro federal al no cumplir con la Regla 45 del Reglamento del Tribunal Supremo de Puerto Rico, *infra*. Posteriormente, el 23 de octubre de 2020, la peticionaria solicitó reconsideración, la cual fue denegada.

Inconforme, el 15 de marzo de 2021, la peticionaria recurrió ante el Tribunal de Apelaciones mediante recurso de *certiorari*.[14] En este, indicó que el Tribunal de Primera Instancia erró al denegar la solicitud de nuevo juicio, porque el período para recurrir al Tribunal Supremo federal no había expirado. No obstante, el foro intermedio declinó expedir el asunto y sentenció que la señora Rosario Paredes incumplió con la Regla 45(e) de nuestro Reglamento, a la vez que destacó que la sentencia

---

[13] 4 LPRA Ap. XXI-B.

[14] Íd., *Petición de Certiorari* (2021), págs. 1-30.

condenatoria era final y firme desde antes de que se decidiera Ramos v. Louisiana, *supra*.[15]

Insatisfecha aún, el 12 de mayo de 2021, la peticionaria acudió ante nos a través de una *Petición de Certiorari* en la que le imputó al Tribunal de Apelaciones haber incidido al resolver que a esta no le aplicaba la nueva norma de unanimidad establecida en Ramos v. Louisiana, *supra*. Arguye que su caso no era final y firme al momento en que se publicó Ramos v. Louisiana, *supra*, por lo que procede anular su sentencia y concederle un nuevo juicio. Además, señala que, para efectos de la norma de retroactividad, la remisión del mandato no convierte un dictamen en final y firme, sino que esto se alcanza cuando se agota el término para acudir ante el Tribunal Supremo federal.

Por su parte, el Ministerio Público, a través de la Oficina del Procurador General, sostiene que no se debe conceder el reclamo de la peticionaria ya que la sentencia en contra de esta es final y firme. Apoya su argumento en que la señora Rosario Paredes abandonó y **renunció** a plantear el asunto de la unanimidad de jurado como un error de **manera voluntaria, expresa y reiterada**. Manifiesta que lo anterior, respondió a que el ordenamiento vigente al momento permitía los veredictos pluralistas. En esa dirección, señala que el trámite

---

[15] Íd., *Resolución del Tribunal de Apelaciones*, págs. 198-210.

apelativo de la peticionaria no envolvía ninguna cuestión federal que le permitiese a la Corte Suprema federal revisar nuestra determinación, ello, basado en su limitada jurisdicción. De igual forma, señaló que la peticionaria no notificó su intención de recurrir en revisión ante el Tribunal Supremo federal por lo que incumplió con lo dispuesto en la Regla 45 del Reglamento de este Tribunal.

Así, el 25 de junio de 2021 expedimos el recurso. Contando con el beneficio de la comparecencia de ambas partes, procedemos a resolver.

II

**A. Regla 192.1 de Procedimiento Criminal**

La Regla 192.1 de Procedimiento Criminal, 34 LPRA Ap. II, provee un remedio post sentencia que le permite a las personas convictas de algún delito solicitarle al Tribunal que anule la sentencia en su contra, la deje sin efecto o la corrija. Esta regla pretende la rescisión de una sentencia por errores estrictamente de derecho, de manera que impide se realicen señalamientos dirigidos a cuestionar la culpabilidad o la inocencia del convicto o a señalar errores de hechos.[16] Es decir, se trata de un mecanismo para cuestionar la legalidad de la sentencia, no su corrección, a la luz de los hechos.[17]

---

[16]   *Pueblo v. Román Mártir,* 169 DPR 809, 824 (2007).
[17]   *Pueblo v. Pérez Adorno,* 178 DPR 946 (2010).

Los remedios que otorga esta regla son los siguientes: anular o dejar sin efecto la sentencia impugnada, ordenar la libertad del promovente, dictar una nueva sentencia, o conceder un nuevo juicio. La concesión de estos procede cuando está presente alguno de los fundamentos siguientes: (1) **la sentencia condenatoria fue impuesta en violación de la Constitución o las leyes de Puerto Rico o la Constitución o las leyes de Estados Unidos**; (2) el tribunal no tenía jurisdicción para imponerla; (3) la sentencia excede la pena prescrita por la ley, o (4) la sentencia está sujeta a un ataque colateral por cualquier motivo.[18]

Además, se requiere que los fundamentos señalados para solicitar la revisión de la sentencia sean planteamientos de derecho que demuestren que "la sentencia impugnada **está viciada por un error fundamental que contradice la noción más básica y elemental de lo que constituye un procedimiento criminal justo**".[19]

De paso, debo puntualizar que la naturaleza del remedio que ofrece la Regla 192.1 de Procedimiento Criminal, *supra*, **es excepcional** y, precisamente, por eso, *no constituye carta blanca* para que los convictos puedan atacar **una sentencia que fue producto de una decisión**

---

[18] Regla 192.1 de Procedimiento Criminal, 34 LPRA Ap. II; D. Rivé Rivera, *Recursos Extraordinarios*, 2da. ed., San Juan, Ed. UIPR, 1996, pág. 185; *Pueblo v. Ortiz Couvertier*, 132 DPR 883, 893 (1993).

[19] *Pueblo v. Rivera Montalvo*, 205 DPR 352, 371, (2020).(Énfasis suplido).

**informada, inteligente y voluntaria**.[20] Por ello, no podemos perder de perspectiva que "el proceso de impartir justicia **incluye la debida protección del principio de finalidad de los procedimientos penales**".[21]

De igual modo, aunque una moción bajo la Regla 192.1, *supra,* no tiene término y puede ser presentada en cualquier momento, de manera que no le aplica la doctrina de incuria, el tribunal puede considerar la tardanza injustificada como un elemento para enjuiciar la buena fe.

## B. Juicio por Jurado

El derecho a juicio por Jurado se encuentra consagrado expresamente en la Sexta Enmienda de la Constitución de los Estados Unidos de América.[22] En particular, dispone que "[i]n all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial, by an impartial jury of the State and district wherein the crime shall have been committed".[23] Así, el derecho a un juicio por Jurado es reconocido como un derecho fundamental para la consecución de un juicio criminal imparcial y fue incorporado a los estados por

---

[20] Íd., pág. 380.

[21] Íd., citando a *Pueblo v. Román Mártir*, 169 DPR 809, 827 (2007). (Énfasis suplido).

[22] Enmienda VI, Const. EE.UU., LPRA, Tomo 1.

[23] Íd.

vía de la Decimocuarta Enmienda de la Constitución de Estados Unidos.[24]

De igual forma, la Carta de Derechos de la Constitución de Puerto Rico consagra el derecho a Juicio por Jurado para los acusados de delitos graves, al disponer que "[e]n los procesos por delito grave el acusado tendrá derecho a que su juicio se ventile ante un jurado imparcial compuesto por doce vecinos del distrito, quienes podrán rendir veredicto por mayoría de votos en el cual deberán concurrir no menos de nueve".[25]

Desde el siglo pasado, es norma reconocida por la Corte Suprema federal que la Sexta Enmienda de la Constitución de Estados Unidos requiere la unanimidad de jurados —en la esfera federal— para que los veredictos fuesen válidos.[26] No obstante, y de manera reiterada, el Máximo Foro federal había declinado extender el requerimiento de unanimidad de jurados a los Estados.[27]

Esta norma cambió drásticamente el 20 de abril de 2020, cuando el Tribunal Supremo federal resolvió el normativo caso de Ramos v. Louisiana, *supra*, en donde se estableció la necesidad de obtener un veredicto unánime para conseguir una convicción válida en los casos donde

---

[24] *Duncan v. State of La.*, 391 US 145, 149 (1968).

[25] Art. II, Sec. 11, Const. PR, LPRA, Tomo 1, ed. 2016, pág. 354.

[26] *Andres v. US,* 333 US 740, (1948).

[27] Véanse*, McDonald v. City of Chicago, III*, 561 US 742, 765 esc. 14 (2010); *Apodaca v. Oregon*, 406 US 404 (1972), *Johnson v. Louisiana*, 406 US 356, 360 (1972); *Williams v. Florida*, 399 US 78 (1970).

se impute la comisión de un delito grave. En armonía, reconoció que el requisito de unanimidad está atado inexorablemente al derecho de un Juicio por Jurado imparcial consagrado en la Sexta Enmienda de la Constitución de Estados Unidos, convirtiéndolo así, en un requisito fundamental de este.[28] De igual forma, determinó que este requisito aplicaba al Gobierno federal y a los estados de manera igual.[29]

Ante este nuevo panorama, en Pueblo v. Torres Rivera II, 204 DPR 288, 307-308 (2020), expresamos que "[e]l reconocimiento de la unanimidad como una cualidad intrínseca del derecho fundamental a un juicio por jurado imparcial es vinculante en nuestra jurisdicción y obliga a nuestros tribunales a requerir veredictos unánimes en todos los procedimientos penales por delitos graves que se ventilen en sus salas".

Recientemente, y en atención a lo anterior, en Edwards v. Vannoy, 141 S.Ct. 1547 (2021), el Tribunal Supremo federal evaluó la aplicación retroactiva del requisito de unanimidad en el veredicto del jurado establecido en el caso de Ramos v. Louisiana, *supra*. Allí, concluyó que el requisito de unanimidad en los veredictos de culpabilidad no aplicaba retroactivamente, por tanto, las convicciones que advinieron finales y firmes previo a Ramos, **no tienen derecho a nuevo juicio.**

---

[28] *Ramos v. Louisiana*, 140 S.Ct. 1390, 1395 (2020).
[29] Íd., pág. 1397.

Específicamente, determinó que este requisito **no aplica retroactivamente a casos finales y firmes en procesos colaterales**.[30] De esta forma, los únicos casos a los que le aplicaría la nueva norma constitucional serían **únicamente a los casos pendientes en apelación directa**.

C. **Señalamientos de error, preservación y renuncia a estos**

La reglamentación aplicable a los diversos recursos apelativos requiere que estos contengan un señalamiento breve y conciso de los errores que, a juicio de la parte apelante o peticionaria, cometió el tribunal revisado.[31] De ahí, que la parte peticionaria tiene la carga de levantar cuantos errores entienda se cometieron en el juicio. El objetivo de esta exigencia es apuntar las faltas que presuntamente cometió la corte inferior, con el fin de exponer, a la vista del foro revisor y la parte contraria, los puntos sobre los cuales se pretende solicitar la revocación de la determinación. De esta forma, para poder preservar un planteamiento jurídico ante un tribunal de mayor jerarquía, incluyendo al foro federal, como regla general, la práctica apelativa requiere que el asunto sea levantado y discutido por la

---

[30] *Edwards v. Vannoy*, 141 S.Ct. 1547, 1562 (2021). "Those new procedural rules apply to cases pending in trial courts and on direct review. But new procedural rules **do not apply retroactively on federal collateral review**". (Énfasis suplido).

[31] Véase, Reglas de Procedimiento Criminal, *supra*; Reglamento del Tribunal Supremo, 4 LPRA Ap. XXI-B; Reglamento del Tribunal de Apelaciones, 4 LPRA Ap. XXI-A.

parte interesada en todas las etapas previas, de lo contrario, se entenderá que desistió del argumento.[32].

En ese sentido, como norma general, un Tribunal revisor está obligado a considerar **solamente los errores señalados por la parte apelante o peticionaria.**[33] Así, una "mera alegación de un error, que luego no se fundamenta o discute, no puede dar motivo para revisar, modificar o de alguna manera cambiar una actuación o decisión de un tribunal o foro administrativo".[34] Ello es así porque las reglas relativas a los recursos apelativos en casos criminales, no requieren que se incluya esta discusión en el llamado "*escrito de apelación*", **<u>pero sí en los alegatos de las partes</u>**.[35]

Sobre la funcionalidad y objetivo que persigue la figura del alegato, hemos reconocido que este es un instrumento esencial en la práctica apelativa no sólo porque trae a la atención del foro apelativo las normas de derecho y la jurisprudencia aplicable, sino porque sirve "para discutir a fondo los errores alegados y para exponer de forma adecuada los fundamentos de la

---

[32] Veáse, *Puckett v. United States*, 556 US 129, 134 (2009). Véase, además, *United States v. Seignious*, 757 F.3d 155, 160 (4to Cir. 2014).

[33] H. Sánchez Martínez, *Práctica jurídica de Puerto Rico, Derecho Procesal Apelativo*, San Juan, Ed. Lexis-Nexis, 2001, págs. 294-299.

[34] *Morán v. Martí,* 165 DPR 356 (2005).

[35] Regla 26(d) y Regla 28(d)(e) del Reglamento del Tribunal de Apelaciones;

apelación".[36] En ese sentido, es norma establecida desde el siglo pasado que, en ausencia de un señalamiento de error, los tribunales no tienen la **obligación de escudriñar los autos** para ver si se ha cometido un error fundamental.[37]

Ahora bien, aunque como regla general un tribunal apelativo no debe entrar a resolver cuestiones no planteadas ante un tribunal de menor jerarquía, a manera de excepción, hemos reafirmado que, en aras de impartir justicia, un "tribunal apelativo tiene la facultad inherente de considerar y resolver **errores patentes** que surjan de un recurso aun cuando éstos no hayan sido presentados por las partes".[38] Es decir, esta máxima restrictiva puede ser obviada **únicamente** en los casos en que se refleje un error patente y con ello se evite un resultado injusto.

Por otro lado, y con relación a la reiterada norma de no considerar planteamientos que no fueron levantados en los foros inferiores, o que fueron señalados, pero **no** discutidos ni fundamentados, este Tribunal ha establecido que "**[l]os errores no discutidos en un alegato <u>se entienden renunciados</u>**" y no serán considerados por los tribunales revisores.[39] Esta norma es reconocida desde el

---

[36] *Morán v. Martí,* supra, citando a *In re Santiago Torres*, 144 DPR 496, 499 (1997).

[37] *Royal Bank v. Goyco*, 34 DPR 521 (1925).

[38] *ELA v. Northwestern Selecta*, 185 DPR 40, 55 (2012); *Vilanova et al. v. Vilanova et al.*, 184 DPR 824, 848 (2012).

[39] *Pueblo v. Adorno Cabrera,* 133 DPR 839, 857 (1993).

siglo pasado tanto en nuestra jurisdicción como en la esfera federal.[40]

Según ha expuesto el Tribunal Supremo de Estados Unidos con relación al proceso de revisión judicial, un peticionario renuncia o desiste de un señalamiento de error cuando existe una **resignación o abandono intencional** de un derecho o un privilegio conocido.[41] De esta forma, la renuncia imposibilita la facultad revisora de un tribunal de mayor jerarquía.[42] En ese sentido, la determinación de si hubo una renuncia se debe examinar caso a caso, realizando un **discernimiento de los hechos y las circunstancias particulares que rodean a este**.[43]

En cuanto a la intencionalidad y voluntariedad que requiere la renuncia de un derecho, hemos indicado que la misma debe ser producto de una elección libre, deliberada y con pleno conocimiento del derecho abandonado y las consecuencias de renunciarlo.[44]

### D. Mandato

El mandato es una figura de especiales implicaciones dentro de los procesos apelativos judiciales. Hemos definido el mandato como "el medio que posee un tribunal

---

[40] Véase, *Cent. Monserrate, Inc. v. Junta Azucarera*, 83 DPR 109, 117 (1961); *Junta de Relaciones del Trabajo v. Simmons Int'l, Ltd.*, 78 DPR, 380 (1955); *Pueblo v. Rivera*, 75 DPR 425, 431 (1953); *Teague v. Lane*, 489 US 288, 297-298 (1989); *Harris v. Reed*, 489 US 255 (1989).

[41] *US v. Olano*, 507 US 725, 733 (1993).

[42] Íd.; Véase, además, *Jackson*, 995 F.3d 476 at 484 (2021).

[43] Véase*, Johnson v. Zerbst*, 304 US 458, 464 (1938).

[44] *Pueblo v. Millán Pacheco*, 182 DPR 595, 612 (2011).

en alzada de comunicarle a un tribunal inferior qué determinación ha tomado sobre la sentencia objeto de revisión y ordenarle actuar de conformidad con la misma."[45] El propósito principal del mandato es lograr que el Tribunal de Primera Instancia actúe de forma consistente con los pronunciamientos del tribunal apelativo de mayor jerarquía.[46]

Sobre lo anterior, en <u>Colón y Otros v. Frito Lays</u>, 186 DPR135, 151 (2012), señalamos lo siguiente:

> "una vez el foro apelativo emite su determinación, y la **<u>misma adviene final y firme, se enviará el mandato correspondiente</u>** al foro recurrido. Es en ese momento, que el recurso que estaba ante la consideración del foro revisor **concluye para todos los efectos legales**, por lo que se entiende que no es hasta entonces que éste pierde jurisdicción en lo concerniente al asunto."

De esta forma, el tribunal sujeto a revisión no adquiere jurisdicción para poder continuar con los procedimientos y ejecutar los dictámenes de la sentencia en alzada, hasta tanto reciba el mandato del tribunal revisor. Es decir, **a través del mandato se le devuelve la autoridad para actuar** según lo dispuesto por el tribunal de mayor jerarquía.[47]

Sobre la figura del mandato, la Regla 45(a) y (e) del Reglamento del Tribunal Supremo de Puerto Rico, *supra*, dispone lo siguiente:

---

[45] *Colón y Otros v. Frito Lays,* 186 DPR135, 151 (2012); *Mejías et al. v. Carrasquillo et al.,* 185 DPR 288, 301 (2012).
[46] *Mejías et al. v. Carrasquillo et al.,* supra*, pág. 301.
[47] *Colón y Otros v. Frito Lays,* supra*, pág. 153-154.

(a) **Diez días laborables** después de la fecha en que se envió a las partes copia de la decisión del Tribunal en un caso, **el Secretario o la Secretaria enviará el mandato al tribunal revisado, a no ser que se haya presentado una moción de reconsideración dentro de dicho periodo o que el Tribunal haya ordenado la retención del mandato**.

.   .   .   .   .   .   .   .

(e) En cualquier caso en que una sentencia o resolución de este Tribunal **pueda ser** revisada por el Tribunal Supremo de Estados Unidos de América mediante un recurso de *certiorari*, **podrá retenerse, a solicitud de parte**, **la remisión del mandato al tribunal revisado por un término razonable.** Si dentro de dicho término se archiva en la Secretaría una certificación del Secretario o Secretaria del Tribunal Supremo de los Estados Unidos de América, que acredite que la expedición del *certiorari*, el expediente y el alegato han sido presentados ante dicho Tribunal, se retendrá el mandato hasta que recaiga una disposición final del recurso de *certiorari*. A la presentación de una copia de la orden del Tribunal Supremo de Estados Unidos de América en la que se deniega la expedición del auto, se remitirá inmediatamente el mandato al tribunal revisado. **En la moción sobre retención del mandato, la parte promovente deberá señalar las cuestiones que se plantearán en el recurso de *certiorari*, con referencia a los hechos y las circunstancias pertinentes del caso.** (Énfasis suplido).

Por otro lado, la naturaleza y objetivo del mandato no es imprimirle carácter de finalidad y firmeza a las sentencias emitidas por los tribunales. Nosotros, al igual que la Máxima Corte federal, hemos establecido que "[u]n dictamen judicial es final cuando se archiva en autos la notificación y se registra la sentencia, pero se convierte en firme según el transcurso del tiempo. Es decir, es firme una vez transcurrido el término para pedir reconsideración o apelar sin que esto se haya

hecho, **o al concluir el proceso apelativo**".[48] (Énfasis suplido). Así, pues, una sentencia final y firme es aquella contra la cual no cabe recurso de apelación alguno debido a que ya transcurrió el término para solicitar apelación, o habiendo presentado el recurso de apelación, el tribunal apelativo la confirmó y los términos de reconsideración ya transcurrieron, o por ambas.[49]

III

El Procurador General sostiene que la sentencia contra la peticionaria se convirtió en final y firme dos meses antes de que el Tribunal Supremo federal resolviera <u>Ramos</u>, de manera que la norma allí adoptada no debía serle aplicada a la peticionaria de manera retroactiva. Coincido con esta posición. Me explico.

Durante su **trámite apelativo directo** ante el Tribunal de Apelaciones, la señora Rosario Paredes señaló, específicamente en su ***escrito inicial de apelación o notificación de apelación***, que el foro primario erró al "no instruir al Jurado sobre un veredicto unánime, 12-0". **No obstante, cuando presentó su *Alegato*, esta <u>se limitó a señalar y discutir únicamente dos errores dirigidos directamente a cuestionar la**</u>

---

[48] S.*L.G. Szendrey-Ramos v. Consejo de Titulares*, 184 DPR 133, 156, (2011); *Clay v. United States* 537 US 522 (2003). Véase, además, R. Hernández Colón, *Práctica jurídica de Puerto Rico: Derecho procesal civil*, 5ta ed., San Juan, Ed. LexisNexis, 2010, Sec. 4106, pág. 378-379.

[49] *Suárez v. ELA*, 162 DPR 43, 62 (2004).

**apreciación y suficiencia de la prueba**. Posteriormente, luego de que el tribunal intermedio confirmó la *Sentencia* en su contra, la peticionaria acudió ante nos, y en su *Petición de Certiorari*, **señaló solo un error**, igualmente, **orientado a atacar la apreciación y suficiencia de la prueba**. Evidentemente, **durante todo su trámite apelativo directo**, especificamente en los escritos sustantivos —*certioraris* y *alegatos*—, la peticionaria **nunca discutió, y mucho menos solicitó, que se revisara la decisión del foro primario basado en el argumento de unanimidad del jurado**.

Ciertamente, la acción de la peticionaria de no argumentar ni discutir el señalamiento sobre la unanimidad en los veredictos por jurados, **representa un claro abandono y una evidente renuncia a cuestionar la determinación del foro primario bajo este fundamento**. Lo anterior, cobra mayor fuerza cuando la propia señora Rosario Paredes **aceptó** que desistió de señalar y discutir el error sobre la unanimidad de jurados porque **el estado de derecho en Puerto Rico permitía veredictos condenatorios mediante el voto mayoritario del jurado**. Es decir, la peticionaria **estaba completamente consciente de la validez que tenía el veredicto en su contra**, y así, tras un análisis circunspecto sobre el ordenamiento jurídico vigente, **decidió no impugnarlo y brindarle completa deferencia al mismo**. Su intención de revisión sobre el particular era inexistente.

Como mencionamos anteriormente, la práctica apelativa requiere que cuando una parte entienda que la determinación que tomó el foro adjudicador es errónea, este asunto sea levantado y discutido por la parte interesada ante el foro revisor, de lo contrario, se entenderá que renunció al argumento. En este caso, ni tan siquiera hay que buscar la intención de la peticionaria, pues, **ella misma aceptó que desistió de plantear y fundamentar** el asunto de la unanimidad como un error, toda vez que en Pueblo v. Casellas, 197 DPR 1003 (2017) reafirmamos la validez de los veredictos pluralistas en Puerto Rico amparados en que el Tribunal Supremo federal nunca había reconocido el requisito de unanimidad como un derecho fundamental oponible a los estados.

En primer lugar, nos parece un contrasentido y **un planteamiento extremadamente contradictorio ──además de acomodaticio──**, que la señora Rosario Paredes, luego de otorgarle completa deferencia a los veredictos pluralistas y haber desistido de señalar el asunto de la unanimidad como un error, pretenda, meses después, impugnar su sentencia **bajo el mismo fundamento que inicialmente abandonó**. La peticionaria **reconoció en múltiples ocasiones que desistió** del reclamo sobre la unanimidad de jurados obedeciendo lo resuelto por este Tribunal en Pueblo v. Casellas Toro, *supra*. Sobre este particular, manifestó que desistió de señalar y discutir este error durante su trámite apelativo directo porque lo

determinado en ese caso era el estado de derecho vigente en Puerto Rico y "[p]resentar una defensa o argumento legal, **con conocimiento de la improcedencia del mismo**, (bajo la apuesta de que en el futuro el estado de derecho cambie), no solo va en contra de la economía procesal sino también contra los deberes de los abogados y abogadas".[50] Es decir, que no era sensato, juicioso, ni ético realizar planteamientos contrarios al estado de derecho. Sin embargo, arguye que estaba en tiempo para acudir al Tribunal Supremo federal para impugnar ese mismo estado de derecho.

O sea, por un lado, **reconoce que no era prudente plantear ese error a nivel apelativo, toda vez que el estado de derecho imperante en Puerto Rico permitía los veredictos por mayoría, pero, por otro lado, arguye que podía impugnar ese mismo estado de derecho ante el Tribunal Supremo federal**. **Planteamiento totalmente contradictorio**. ¿Cómo se justifica esta incongruencia? Claramente, no tiene justificación y solo responde a un intento superficial de moldear las circunstancias a su favor. Queda claro que la deferencia hacia el estado de derecho vigente claudicó instantáneamente al momento de resolverse Ramos v. Louisiana*, supra*.

Como reflejan las pasadas expresiones, la peticionaria **tenía la intención manifiesta de no impugnar**

---

[50] Apéndice de la Petición de *Certiorari*, *Moción de Reconsideración*, pág. 160.

**el derecho vigente en Puerto Rico** porque las determinaciones de este Tribunal eran claras. Entonces, ¿por qué razón arguye ahora que su caso no era final y firme y menciona que podía impugnarlo ante la Corte Suprema federal? O sea, sería un sinsentido pensar que la señora Rosario Paredes abandonó su reclamo en su proceso estatal, pero tenía la intención de retomarlo ante el máximo foro federal. No puedo aceptar tal proceder. La conducta contradictoria de la peticionaria faltó a la buena fe cuando abandonó el reclamo de unanimidad bajo un correcto entendimiento de la normativa vigente, pero luego decidió que sí estaba a tiempo para impugnarlo. Su cambio radical de posición responde a un intento desesperado de evadir las consecuencias de los actos o decisiones propias, realizadas con intención y conocimiento, con el fin de evitar los efectos de la sentencia en su contra. Los tribunales no podemos ser tan inocentes como para creer declaraciones que nadie más creería.[51]

Por otra parte, la mayoría de este Tribunal opina que este caso no es final y firme y esboza un raciocinio, a mi juicio, cuestionable. La opinión establece que "*una parte no está impedida de presentar un recurso de revisión ante el máximo foro federal, aunque su recurso, ante la falta de un asunto federal, culmine con toda probabilidad en la denegatoria del Tribunal a*

---

[51] *Pueblo v. Luciano Arroyo*, 83 DPR 573, 582 (1961)

*intervenir*". Continúa estableciendo que para propósitos de revisión judicial ante el máximo Foro federal "***[e]s inmeritorio*** *si durante el proceso apelativo local se había planteado un asunto federal o no*" y concluye estableciendo que "*No podemos resolver que, aunque la nueva norma de Ramos **se resolvió luego de finalizada la revisión por parte nuestra**, **pero antes de que adviniera firme** por el transcurso del término para ir en revisión al Tribunal Supremo federal, la señora Rosario Paredes no tiene ningún remedio en ley*".

La conclusión del razonamiento antes reseñado es que, independientemente se tenga o no una cuestión federal planteada como controversia, o independientemente se haya renunciado a plantear un error revisable por el Máximo Foro federal, todo caso atendido por este Tribunal será final y firme **únicamente cuando transcurra el tiempo para acudir ante el Tribunal Supremo de Estados Unidos.** Es decir, todos y cada uno de los casos que este Tribunal decida advendrán final y firme cuando transcurra el término para acudir en revisión ante dicho foro. Bajo este fundamento, por más frívolo que sea un planteamiento, aunque no presente un cuestionamiento federal, la firmeza se adquirirá una vez transcurra el tiempo para acudir en revisión ante el Máximo Foro federal o cuando este emita una determinación. No estoy de acuerdo. Este proceder quebrantaría el importante principio de imprimirle finalidad y firmeza a las

decisiones de esta Curia y dejaría nuestra autonomía judicial a merced del tiempo para recurrir al Tribunal Supremo federal o de una determinación de esa curia. No puedo estar de acuerdo con este fundamento.

Lo anterior sin hacer mención de que el trámite apelativo de la peticionaria carecía de un cuestionamiento federal que le otorgara jurisdicción al Máximo Foro federal para revisar una determinación de este Tribunal.

Por otro lado, la opinión mayoritaria menciona que puede comprender la razón por la cual la señora Rosario Paredes no abundó ante el foro intermedio sobre el señalamiento de error respecto a la unanimidad del jurado. Primero, no es que la peticionaria no abundó sobre este error, **sino que desistió intencionalmente** de presentarlo como un error que vició la sentencia en su contra. Debemos tener en cuenta que el error sobre la unanimidad se presentó única y exclusivamente en el *escrito de apelación*. Este documento, por su naturaleza, y por mandato reglamentario, es un escrito corto y sencillo que tiene como fin notificarle al foro revisor la sentencia que se pretende apelar, la información de las partes y señalar de manera breve y concisa los errores en que se fundamenta la apelación. Este escrito no puede tener más de tres (3) páginas.[52] **Es en el alegato**

---

[52] Reglamento del Tribunal de Apelaciones, *supra*.

**del apelante donde se fundamentan los errores antes señalados**, de modo que solo se revisen los allí discutidos. Como mencionamos, en su proceso apelativo directo ——**alegato ante el TA y** *certiorari* **ante nos**——**, la peticionaria nada se mencionó al respecto.**

La peticionaria justificó el abandono del planteamiento de unanimidad apoyada en que en <u>Pueblo v. Casellas Toro</u>, *supra*, resolvimos que los veredictos de culpabilidad rendidos mediante el voto mayoritario del jurado eran constitucionalmente válidos y que al ser ese el estado de derecho vigente era improcedente impugnarlo. Menciona la mayoría que, "[e]sa explicación es satisfactoria" para no entender el planteamiento como renunciado y no catalogar la sentencia como una final y firme. Bajo mi criterio, no es satisfactorio, pues, precisamente, de eso se trata el derecho y la práctica apelativa, de impugnar y retar el ordenamiento vigente o las determinaciones de foros inferiores cuando se entiende es errado. Si fuese de otra forma, el derecho nunca hubiese evolucionado. **Un ejemplo de eso es el propio caso de <u>Ramos v Louisana</u>**, *supra*, **de forma que si el Sr. Evangelisto Ramos no hubiese decidido impugnar la decisión del Tribunal Supremo de Louisiana ——<u>que validó constitucionalmente los veredictos por mayoría</u>—— ante el Alto Foro federal, hoy no estaríamos hablando de esta nueva norma.**

Resalta la mayoría, además, que "[n]o podemos penalizar a una parte por acatar los precedentes de este Tribunal". Entonces, me pregunto, si la peticionaria acató el precedente establecido en Pueblo v. Casellas, *supra*, y acogió como buena la norma allí establecida, ¿cómo, o por qué razón puede argüir posteriormente que podía impugnarla? ¿Acaso olvidamos que uno de los fundamentos expresados en Casellas Toro, *supra*, fue que el Tribunal Supremo federal nunca había reconocido el requisito de la unanimidad en los veredictos de jurados como un derecho fundamental oponible a los estados y territorios? Ciertamente, si pretendemos darle validez a la deferencia mostrada hacia nuestro estado de derecho en aquel momento, debemos otorgarle igual valor al estado de derecho que permeaba en el ámbito federal de no reconocer el requisito de unanimidad como un derecho fundamental aplicable al territorio de Puerto Rico.

Si la muestra estatal se fundó en Casellas Toro, *supra*, para de alguna manera justificar el abandono del reclamo, la muestra de jurisprudencia federal es más amplia al momento de validar los veredictos pluralistas de los estados que así lo permitían.[53] Ese, precisamente, fue el estado de derecho vigente **durante todo el trámite apelativo** de la peticionaria y **hasta dos meses después de que el mismo culminara** cuando el 20 de abril de 2021,

---

[53] Con esto, hacemos referencia a *Duncan v. State of La.*, 391 US 145 (1968) *Apodaca v. Oregon*, 406 US 404 (1972); *Johnson v. Louisiana*, 406 US 356 (1972); *McDonald v. City of Chicago, III*, 561 US 742, 765 esc. 14 (2010).

este cambió tras la decisión de <u>Ramos v. Louisiana</u>, *supra*. En ese sentido, al este Tribunal finalizar la revisión del caso, <u>de acuerdo con lo argumentado por la propia peticionaria</u>, esta carecería de alternativas, toda vez que el estado de derecho vigente tanto en la jurisdicción federal, como en la nuestra, permitía la pluralidad y así, **ella decidió no impugnarlo**.

Por otra parte, con tal de justificar el abandono del reclamo y obviar las repercusiones que de ordinario tendría tal acción, la mayoría hace referencia a los casos de <u>State v. Varnado</u>, 296 So.3d 1051 (La. 2020) y <u>State v. Williams</u>, 366 Or. 495, 499 (2020), casos donde los máximos foros judiciales de Louisiana y Oregon reconocieron que la norma de Ramos aplicaba a casos que no eran finales y firmes aun cuando el planteamiento de unanimidad no se había planteado en las cortes inferiores.

Estos casos son particularmente distinguibles del nuestro. En <u>State v. Varnado</u>, *supra*, la petición de *certiorari*, ——como parte del trámite apelativo directo—— **aún se encontraba pendiente ante la atención del Tribunal Supremo de Louisiana al momento en que se resolvió Ramos**.[54] Por su parte, en State v. Williams, supra, el trámite apelativo del caso, **también se encontraba vivo**

---

[54] The present matter was pending on direct review when *Ramos v. Louisiana* was decided, and therefore the holding of Ramos applies.

**ante la consideración del Tribual Supremo de Oregon al momento en que se decidió Ramos**.[55] De esta forma, es indiscutible que esos casos se encontraban similarmente situados a Ramos.[56] La diferencia con el caso ante nuestra consideración es que el presente **no estaba pendiente de adjudicación en ningún foro**. La sentencia de la peticionaria contaba con una determinación **final** de este Tribunal. Incluso, atendimos la reconsideración presentada por la peticionaria dos meses antes de la decisión del normativo caso federal. La señora Rosario Paredes no solicitó una segunda reconsideración. En este momento estriba el elemento medular para el entendimiento de que, en efecto, el caso se convirtió en firme. En virtud de ello, y en reconocimiento de que la peticionaria había decidido no impugnar el estado de derecho vigente, este Tribunal emitió el correspondiente mandato el 5 de febrero de 2020, esto es, **transcurridos los tres (3) días** que tenía la peticionaria para solicitar una segunda reconsideración ante nos.

Sobre este particular, la mayoría establece que el Procurador General mencionó que el caso advino final y

---

[55] De hecho, el peticionario en State v. Williams, 366 Or. 495, 499 (2020) no preservó el error inicialmente ante el foro apelativo intermedio, no obstante, lo planteó mediante reconsideración. Esto, respondió a que el Tribunal Supremo federal había expidió el 19 de marzo de 2019 el caso de Ramos v. Lousiana, supra. En el caso ante nuestra consideración, aun cuando se expidió Ramos, la peticionaria decidió no levantar tal cuestionamiento y otorgarle entera deferencia al estado de derecho vigente.

[56] Véase, *Griffith v. Kentucky*, 479 US 314, 328, 107 S.Ct. 708, 93 L.Ed.2d 649 (1987); *Ramos v. Louisiana*, 140 S.Ct. 1390 (2020).

firme porque emitimos el correspondiente mandato. Respetuosamente, diferimos de esa conclusión.

En la página 18 del *Alegato* del Procurador General, este menciona expresamente lo siguiente:

> "es importante reconocer que la naturaleza y el objetivo del mandato **no es imprimirle carácter de finalidad y firmeza a las sentencias emitidas por los tribunales**. El Tribunal Supremo de Puerto Rico, al igual que el Máximo Foro federal, ha establecido que '[u]n dictamen judicial es final cuando se archiva en autos la notificación y se registra la sentencia, pero se convierte en firme según el transcurso del tiempo. Es decir, es firme una vez transcurrido el término para pedir reconsideración o apelar sin que esto se haya hecho, o al concluir el proceso apelativo'". (Énfasis suplido y citas omitidas).

Lo anterior, manifiesta la contención del Ministerio Público de, precisamente, remarcar que el mandato no es lo que le imprime firmeza a las determinaciones judiciales, sino que es el paso del tiempo como bien lo establece la mayoría.[57]

En ese sentido, tengo que estar de acuerdo con el análisis integral de la parte recurrida. La acepción

---

[57] La mayoría, al fundamentar los preceptos generales de la figura del mandato, en su página doce (12) convenientemente, omite citar parte de lo expresado por esta Curia en <u>Colón y Otros v. Frito Lays</u>, 186 DPR 135, 153 (2012). Allí, expresamos que "una vez el tribunal en alzada emite su determinación, **y la misma adviene final y firme, se enviará el mandato correspondiente al foro recurrido**. Es en ese momento que el recurso que estaba ante la consideración del foro revisor concluye para todos los fines legales, por lo que se entiende que no es hasta entonces que éste pierde jurisdicción en lo concerniente al asunto.

correcta en derecho es que, al mes de febrero de 2020, el estado de derecho en Puerto Rico y bajo la jurisdicción federal, permitía los veredictos de culpabilidad por mayoría. La última determinación de este Tribunal fue emitida el 24 de enero de 2020, la cual se **notificó el 30 del mismo mes** en la que denegamos la primera reconsideración. De esta forma, la señora Rosario Paredes tenía, por reglamento, tres (3) días laborables para solicitar una segunda reconsideración, solicitud que nunca presentó. Esto, denota aun más la falta de intención y diligencia para apelar o proseguir con su trámite directo. Por ello, **y en virtud de las propias acciones de la señora Rosario Paredes respecto a que no tenía intención de impugnar el asunto de la unanimidad**, esta no tenía ningún otro remedio que solicitar, puesto que, reiteramos, la jurisprudencia que utilizó la peticionaria para escudar su inacción y abandono de reclamo recogía lo que, en efecto, era la norma imperante en ese preciso momento tanto a nivel estatal como federal, entiéndase, la validez de los veredictos mayoritarios. Consecuentemente, luego de transcurrido el **tiempo disponible** para solicitar la segunda reconsideración, su caso adquirió finalidad y firmeza el 5 de febrero de 2020. Evidentemente, esto ocurrió en una fecha anterior a la decisión de Ramos v. Louisiana, *supra*.

Finalmente, establecido que el derecho vigente al momento en que este Tribunal atendió el proceso apelativo directo de la señora Rosario Paredes era que se permitía los veredictos de culpabilidad por mayoría, procede entonces, que nos hagamos las siguientes preguntas:

Al amparo de la Regla 192.1, la sentencia dictada contra la señora Rosario Paredes ¿estaba viciada por un error fundamental? **Indiscutiblemente, no estaba viciada por un error fundamental**, toda vez que el delito imputado quedó probado más allá de duda razonable y el derecho vigente durante todo su trámite apelativo directo, permitía los veredictos de culpabilidad por mayoría de jurados. Por ende, era una sentencia perfectamente válida. Al momento de presentar su alegato ante el Tribunal de Apelaciones, así como el *certiorari* ante este Tribunal, ¿había preservado la peticionaria el planteamiento sobre la unanimidad de jurados? **No**, la peticionaria renunció a plantear el error sobre la unanimidad basado en que el derecho vigente y reiterado en Casellas Toro, permitía los veredictos por mayoría y descartaba la unanimidad.

Entonces, si al concluir precisamente que la sentencia contra la peticionaria era una completamente válida y que la propia peticionaria le brindó total deferencia al derecho vigente, ¿bajo qué fundamento se sostiene que la sentencia no era final y firme? Ciertamente, es mi criterio que, bajo las circunstancias

particulares de este caso, el mismo era final y firme al momento en que se decidió Ramos. Concluir lo contrario y acoger como válidos los planteamientos de la peticionaria, resultaría en apoyar y premiar una serie de acciones contradictorias dirigidas a crear un escenario idóneo para eludir las serias consecuencias de una sentencia criminal. Por todo lo anterior, no puedo estar de acuerdo con la posición mayoritaria.

IV

Por los fundamentos antes expuestos, hubiese resuelto que la nueva norma adoptada en Ramos v. Louisiana, *supra*, no aplica a este caso, toda vez que la sentencia en cuestión era final y firme al momento de establecerse la nueva norma constitucional, tal cual resuelto en Edwards v. Vannoy, *supra*. De esta forma, confirmaría la *Resolución* emitida por el Tribunal de Apelaciones y declararía no ha lugar la solicitud de nuevo juicio.



                                   Edgardo Rivera García
                                   Juez Asociado